IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09 C 5849 ) |
| COLLECTORS TRAINING INSTITUTE OF ILLINOIS, d/b/a CTI COLLECTION SERVICES, | ) ) ) ) ) |
| Defendant. | ) |

# OPINION AND ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this retaliatory discharge suit against defendant Collectors Training Institute ("CTI") on behalf of former CTI employee Merilyn Williams ("Williams"). During the relevant period, CTI was owned by Colby Smith, William Leggett, and Lonnnie Upshaw. CTI is a collection agency that employs approximately 150 persons. EEOC is a federal agency authorized to bring actions to enforce

Title VII. *See* 42 U.S.C. § 2000e-5(f)(1), (3). This Court has jurisdiction of the subject matter and of the parties.

Colby Smith is the CTI official whom Williams accused of harassment and gender discrimination in underlying internal complaints. However, gender and sex discrimination claims are not issues in this case. It is claimed by plaintiff that Williams was fired in retaliation for having made complaints and that defendant's reason for discharge -- Williams's refusal to answer questions of an investigator -- was a pretext for firing her.

The case is now before the Court on defendant's motion for summary judgment. Summary judgment can only be granted when there is no genuine issue of material fact and the moving part is entitled to judgment as a matter of law.

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." **Logan v. Commercial Union Ins. Co.**, 96 F.3d 971, 978 (7th Cir. 1996) (citing **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." **Celotex**, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

Viewing the facts from the point of view of the non-movant plaintiff, the record is as follows.

Williams was employed as a collector and IT clerk from 2005 until discharged on September 14, 2007. During that period, her work was commended and she received raises. Williams complained about Smith's treatment of her on four occasions. She followed a complaint process created by human resources specialist Donna Williams which entailed filling out a form called Complaint Form for Offensive Behavior. The human resources department had two persons, Dana Williams and Donna Poole.

In her first complaint, dated May 3, 2007, Williams complained about Smith's tone of voice when speaking to her. On June 8, 2007, Williams submitted a second complaint stating that Smith was subjecting her work to unfair scrutiny and using his position as an owner to intimidate her. Williams alleged that Smith was treating her unfairly because she was a woman. On August 31, 2007, Williams submitted a third complaint alleging that Smith was creating a hostile work environment for her and that she was trying to stay away from him. On September 10, 2007, Williams submitted a fourth complaint connecting Smith's alleged mistreatment of her to her sex.

On September 10, 2007, Poole tried to schedule a meeting with Williams, Smith, and Lonnie Upshaw, another owner. Williams had a doctor's appointment after work and did not want to meet. She was told that she must participate if she wanted her complaints investigated. She agreed to a meeting that was scheduled for September 14, 2007. Williams expected that Poole would be present.

A meeting was scheduled to take place in Upshaw's office. According to Upshaw, the meeting was to discuss an e-mail exchange between Williams and a co-worker in which it was suggested that Smith was having an affair with their supervisor. Williams responded that she did not think so. No one at CTI had raised the issue of these e-mails with Williams prior to the meeting. Upshaw said the idea of the meeting was to look at why the IT department was not being productive. Upshaw was not aware of Williams's complaints. Upshaw told Poole that an outside attorney (Charles Krugel who is attorney for defendant in this case) would conduct the meeting. When Poole told Upshaw that she planned to attend the meeting, he told her to stay home that day.

On September 13, 2007, the day before the scheduled meeting, Williams filed a gender discrimination complaint with the EEOC. It is undisputed that defendant did not know of the complaint until after the scheduled meeting.

On the day of the meeting, Williams was called into Upshaw's office. As Upshaw described the meeting, he began by introducing Krugel to Williams. Then Krugel began asking questions about e-mails exchanged between Williams and a co-worker in the IT department. Williams refused to answer questions about the e-mails and said she wanted her own attorney to be present. Upshaw testified that he had no objection to Williams having an attorney present although it is unclear that he said this at the meeting. According to Upshaw, there was no discussion of Williams's complaints against Smith.

Krugel's description of the meeting is very different from Upshaw's. Krugel said that he told Williams that they were there to discuss her complaints against Smith and Williams refused to respond and demanded the presence of an attorney. Krugel stated that he brought up the e-mails after a break. After another break, Upshaw and Krugel returned to the meeting with Leggett. Leggett told

Williams she could be fired for not responding to questions. Williams refused to respond and was immediately terminated.

Poole later told Leggett that, if she had been at the meeting, it would not have ended as it did. Progressive discipline procedures were not followed. Also, Krugel suggested to the owners that they continue to investigate Williams's complaints against Smith, but that was not done.

As shown, what actually was said by each of the persons attending the meetings on September 14 is in dispute -- even among defendant's witnesses. Plaintiff relies on the direct method of proof of retaliation. Using the direct method, it is clear that Williams engaged in protected activity and suffered an adverse employment activity. The issue then becomes whether there is a causal connection between these elements of proof. Was the discharge for refusing to answer questions a legitimate non-discriminatory reason for firing Williams or was it rather a pretext for firing Williams for making complaints? On defendant's motion for summary judgment, it is taken as true that defendant's treatment of plaintiff's complaints was irregular and deviated from normal procedures. Deviation from normal procedures, as appears to have occurred in this case, can

support a finding of pretext. *See **Carry Cos. of Ill., Inc. v. N.L.R.B.**,* 30 F. 3d 922, 933 (7th Cir. 1994). Accordingly, defendant's motion for summary judgment must be denied.

Defendant is represented in this case by the attorney who is a witness to what happened at the meeting when plaintiff was terminated. With limited exception, a lawyer may not be both a witness and an attorney for a party at trial. *See* N.D. Ill. L.R. 83.53.7. If Mr. Krugel is to be a witness at a trial of this case, he must withdraw and another lawyer must take his place.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [15] is denied. This case is set for a status hearing on February 17, 2011 at 11:00 a.m.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 31, 2011